TAYLOR, Presiding Judge.
The appellant, Leola Felder, appeals her convictions for conspiracy to traffick in cocaine, a violation of § 13A-12-231, Code of Alabama 1975, and to the unlawful distribution of a controlled substance, a violation of § 13A-12-211. She was sentenced to 10 years in the state penitentiary on the conspiracy conviction and to a concurrent 5-year sentence on the conviction for the unlawful distribution of a controlled substance. This latter sentence was enhanced by an additional five years’ imprisonment pursuant to § 13A-12-250, because the sale occurred within three miles of a school.
The state’s evidence tended to show that Leola Felder, along -with her siblings, Billy Joe, Americain, and Earnestine were selling cocaine from their residence on Martin Patton Avenue in Montgomery. Based on complaints from Felder’s neighbors, police placed the house under surveillance and conducted a series of controlled buys during August and September 1994, using undercover operatives. On September 23, 1994, approximately 20 police officers executed a search warrant on the Felder house. The Felder siblings, except for the appellant, were arrested as they attempted to flee the house. The appellant was later arrested at a nearby house after she had successfully eluded the police at the Felder house. Officer Michael Drummond with the Montgomery Police Department testified that he inventoried the residence. He testified that most of the rooms were uninhabitable and were stacked with boxes and furniture and that there was no food in the kitchen. One room contained drug paraphernalia, guns, and a large quantity of drugs.
I
The appellant first contends that the trial court erred when it failed to give her requested jury instruction relating to the credibility of certain witnesses, informers in this case, who testified that they had drug problems. The requested instruction was as follows:
“If an informer is also a narcotics addict, there are additional reasons why his testimony should be considered with great *492 care. An addict has a constant need for a supply of drugs and for money to support his habit, and also may have abnormal fear of imprisonment in which this supply of drugs might be cut off. These are special circumstances which you may consider in weighing testimony of this kind. You, of course, may give the testimony such weight as you think proper, after considering all relevant circumstances.”
The appellant bases his argument on the Eleventh Circuit Pattern Jury Instructions: Criminal Cases (1985), which includes an instruction on witnesses known to be addicts. This instruction reads as follows:
“The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.
“For example, a witness who was using addictive drugs during the time he or she testified about, or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have reason to make a false statement because he or she wants to strike a good bargain with the Government.
“So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.”
Eleventh Circuit Pattern Jury Instructions: Criminal Cases 36 (1985).
Alabama, however, has not adopted a pattern jury instruction relating to the credibility of witnesses in a criminal case, and Alabama is not bound by instructions suggested for the federal courts. There is a pattern jury instruction in civil cases that reads as follows:
“You are the sole judges of the evidence and of the credibility of the witnesses. You may accept or reject any part of the testimony of any witness and you should accept only the testimony you consider worthy of belief. In determining the weight to be accorded the testimony of any witness, you may consider the demeanor of the witness while on the witness stand; his apparent candor or evasion or the existence or non-existence of any bias or interest.”
Alabama Pattern Jury Instructions — Civil (2d ed. 1993).
The trial court in this case gave a lengthier instruction on the credibility of witnesses than that recommended by the Alabama Pattern Jury Instructions — Civil. The court stated:
“One of the things you have to decide when you go into the jury room is the credibility of the witnesses. That is, who you are going to believe. Now the law says that, you know, you decide the "witness’ credibility in the court just like you decide a witness’ credibility outside the court. You decide a person’s credibility practically every day. Some of you come from different backgrounds, work experiences, etc.
“You talk to someone every day that you have to decide whether you believe what they are telling you at that time. It could be your wife, husband, your children, it could be a total strange[r], or your next door neighbor. How do you do that? For lack of a sophisticated way of saying it, I call it reading a person. What you really do is you just look at them and size them up. You decide, ‘Do I believe what you are telling me?’ You know how to do that outside of court. That’s the way you do it here.
“That is the reason why this witness stand is near you or you are near the witness stand, without any interruption or anything in between you. In addition to listening to the witnesses, the law says you have an opportunity to observe the witnesses as they testify, observe them, look at them, observe them, size them up, and decide whether you believe them.
“How does the law say you go about doing that? The law says you can look at the witness’s demeanor on the stand. You can take into consideration their behavior, whether or not they have an interest in the case, whether or not they can get any benefit from the case, whether or not they have any bias, whether or not they show any prejudice. All of those things the law *493 says you should look at to decide a witness’ credibility.
“Then the law says that if you find a witness credible but some part of the witness’s testimony not credible, then the law says you can disregard that witness’s testimony that you do not find to be credible or worthy of belief as long as you do not disregard any witness’s testimony arbitrarily or capriciously. Of course, if you find a witness who is not credible, then you can disregard all of that witness’s testimony.
“Now the law says, however, before you start discarding or disregarding any testimony, or casting off any testimony, and if you find any discrepancies in any testimony, you should marshal it altogether to make it speak the truth. To reconcile it all. Then when you do that, and you have done the best that you can, and if there is still some that stands out there that you just don’t find credible, then the law says you can disregard that and just move that away from your deliberations.”
The trial court’s instruction on credibility was more than adequate. David Westfield, an informant, testified that he had been addicted to cocaine and that he had gone through rehabilitation. Charlie Boswell, an informant, testified that he was addicted to cocaine and that he was in a treatment program at the time of trial. Boswell further testified that he had used illegal drugs within the two-month period before the trial. Boswell stated that he had acted as an informant during nine months of sobriety before his most current relapse. The jury was fully apprised that these witnesses had problems with drug addiction. Following the trial court’s instructions, the jury was free to disbelieve or to believe their testimony. The jury chose to believe their testimony. There was no error in the court’s instructions or in the court’s refusing to give the requested instruction.
The appellant further contends that the trial court erred when it failed to correctly instruct the jury on reasonable doubt. Specifically, the appellant contends that the trial court should have instructed the jury that a reasonable doubt may arise from “any part of the evidence.” The trial court stated the following in its instructions:
“I will tell you now that reasonable doubt can arise from the evidence or from a lack of evidence ..., and you are to consider that in reaching your verdict.”
The trial court’s entire jury charge adequately conveyed the principle of reasonable doubt to the jury. “A circuit judge may correctly refuse written requested jury charges if his oral charge covers the same legal principles.” Blackmon v. State, 574 So.2d 1037, 1041 (Ala.Cr.App.1990). See also, § 12-16-13, Code of Alabama 1975; Rule 21.1, Ala.R.Crim.P.
II
The appellant next contends that the trial court erred by denying her motion for a mistrial. The appellant claims that the state incorrectly elicited testimony from Officer O.D. Perkins, of the Montgomery Police Department, concerning the appellant’s exercise of her right to remain silent after she was given her Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights. However, to preserve a matter for appellate review, a timely objection must be made at trial. Ex parte Crymes, 630 So.2d 125 (Ala.1993). The following occurred during the testimony of Officer Perkins:
“Q [prosecutor]: Where was [the appellant] when you apprehended her?
“A: She was inside of the house sitting on the arm of the sofa.
“Q: What did she say or what did you say to her when you first came in contact with her?
“A: I told her that I needed to talk to her. She asked me for what. I told her we had drug charges on her.
“Q: Did she appear nervous or out of breath or anything?
“A: She appeared nervous. I don’t know whether she was out of breath or not.
“Q: After that initial statement, what else happened?
“A: I then placed handcuffs on her, and began advising her of her Miranda rights.
*494 “Q: Okay. Did she make any statements to you after you read her her rights?
“A: No, she didn’t.
“MR. DUFFEY [appellant’s counsel]: Your Honor—
“Q: Approximately how long after you got off the back of that truck, how much of a time delay was there?”
The appellant did not object to the state’s question. Further, the appellant did not make a motion for a mistrial or request a curative instruction until the witness had completed his testimony. “A proper objection must be made after the question calling for objectionable testimony is asked and before the witness answers.” Crymes, 630 So.2d at 127. “An issue that was not timely raised at trial will not be considered on appeal. Even constitutional issues must first be correctly raised in the trial court before they will be considered on appeal.” Hansen v. State, 598 So.2d 1, 2 (Ala.Cr.App.1991). (Citations omitted.) Furthermore, even had this issue been preserved, we could conclude that this isolated statement from seven volumes of testimony did not prejudice the appellant and that the error, if any, was harmless. Rule 45, Ala.R.App.P.
Ill
The appellant contends that the trial court erred in receiving into evidence numerous items discovered in the house at the time of the search, including guns, drugs, cash, and other items, such as utility bills that bore the names of different members of the Felder family. Specifically, she contends that none of this evidence was relevant to proving the crimes with which she was charged. The appellant adopts and incorporates by reference those parts of the brief of Earnestine Felder discussing this issue.[1]
Initially, we observe that no objections were made to the admission of most of the evidence introduced at trial.
Furthermore,
“Any orderly analysis, of admissibility should begin with a consideration of whether the evidence is material or of eonsequence to the determination of the action. Fruitful inquiry into this issue can only begin when the objecting party succeeds in forcing the opponent to announce the purpose for which the evidence is being offered. Once that purpose is identified, the materiality or ‘of consequence’ issue then becomes one of whether that purpose is an issue in the case being litigated. Stated alternatively, as expressed in the Alabama Rules of Evidence:
“ ‘Rule 401. Definition of “Relevant Evidence”
“ ‘ “Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.’
“This rule combines the historically separate doctrines of relevancy and materiality. Combining the two concepts, however, should not cause either term to lose its independent meaning in the law of evidence. As observed in the advisory notes to Rule 401:
“ ‘Rule 401 merges the separate evi-dentiary concepts of materiality and relevancy. No relevant evidence is to be admitted unless its logical relevancy goes toward a fact or inference that is “of consequence to the determination of the action.” By use of this phrase, Rule 401 adopts the common law materiality concept, as that concept has evolved.’
“It is imperative for counsel, even after the adoption of Rule 401, to begin any evidentiary analysis with a consideration of materiality or whether the evidence is aimed at proving a fact that is of consequence to the action. Going first to relevancy, or whether the evidence possesses a tendency in logic to make a fact more or less probable, may have deadly results in some cases. First, it may cause one to overlook the issue of whether the fact, upon which the evidence is offered, is of consequence to the action. Second, it places the objecting party in the intellectu *495 ally awkward position of having to go back to argue that the fact is not of consequence or is immaterial after having lost an earlier objection that the evidence has no tendency to make the fact that is of consequence more probable. Last, the party who begins by contending that the evidence is irrelevant — i.e., that the evidence does not render the fact more probable — may be argued to have waived any subsequently asserted immateriality objection based upon the assertion that the purpose is of no consequence to the action being litigated.”
C. Gamble, McElroy’s Alabama Evidence § 20.01 (5th ed. 1996). (Emphasis original.)
Certainly, the evidence was material to proving, the state’s case of constructive possession. Alabama follows a liberal test to determine the relevancy of evidence. “[E]vi-dence is admissible if it has any probative value, however slight, upon a matter in the case.” McElroy’s Alabama Evidence, § 21.01(1).
As this court stated in Reed v. State, 401 So.2d 131 (Ala.Cr.App.), writ denied, 401 So.2d 139 (Ala.1981):
“In the case at bar the house was laden with marijuana amounting to over 24 pounds. It was packaged in various shapes and sizes and was accompanied by two sets of scales and three cigarette rollers. The introduction of the testimony of the phencyclidine was admissible as part of the res gestae and part of one occurrence. Flippo v. State, Ala.Cr.App., 359 So.2d 1184.
“Appellant also contends that it was error to allow testimony that three weapons and seventy-five hundred dollars ($7,500.00) in cash were found in the search....
“In this case, the guns and money like the phencyclidine were relevant to the case as part of the res gestae to show the ‘complete story’ and these items had probative value to establish that the possession of marijuana was not for personal use only. Flippo v. State, supra.”
Reed, 401 So.2d at 136.
The Alabama Supreme Court further extended the notion of a liberal test of materiality and relevancy in Rowell v. State, 666 So.2d 830 (Ala.1995), where evidence that a telephone pager and $800 were seized from the appellant’s car was found to be material and relevant in a prosecution for constructive possession of cocaine. Therefore, the items seized were correctly received into evidence as part of the res gestae of the crimes for which the appellant was charged and to establish the appellant’s connection to the house.
For the foregoing reasons, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.

. Rule 28(i), AIa.R.App.P., allows one appellant to adopt by reference any part the brief of another appellant where multiple appellants are involved.